Curran, Dennis J., J.
This is an action alleging nursing malpractice arising from the death of nine-year-old Jordan Weiss. Before me is the defendant’s motion to inspect certain psychotherapy records of Jordan’s father. A hearing was held on this motion.
After reflecting on the issues presented in the defendant’s motion and reviewing supportive and opposition papers, the motion is DENIED.
Marcus and Sara Weiss lost their nine-year-old son, Jordan, due to an alleged failure to properly diagnose his condition. As evidenced by Mr. Weiss’s deposition transcript, their hearts were broken by this tragedy, their grief overwhelming. As a result, Mr. Weiss, who *332 had never before received psychological counseling, sought professional help for his agony.
The defendant presently claims that she needs to probe Mr. Weiss’s psychological records relating to these bereavement sessions because she wants to see evidence “. . . of [Mr. Weiss’s] guilt for failing to report certain signs and symptoms to the [defendant] nurse . . .” While this has some superficial appeal, the best evidence of what was said when Mr. Weiss telephoned Harvard Vanguard’s triage unit on the evening of January 18, 2003 to report his son’s sickness is an audio recording that Harvard Vanguard presently has[1] of that call. The defendant claims that the audiotape has portions that are inaudible. If that is so, the proper course is to submit such recording to an engineer expert to restore those segments. The best evidence of that conversation exists: the defendant Bragan must simply chart a more assiduous course to discover it.
Since the defendant filed this motion, Mr. Weiss has tacked by waiving his emotional distress claim; the defendant has likewise shifted the basis for their present motion by now pointing out that in the wrongful death statute, two of the eleven statutory recovery bases include “. . . society [and] companionship ...” G.L.c. 229, section 2. Notably, however, as plaintiffs counsel ably points out, those grounds do not include “grief, anguish and bereavement of the survivors ...” See MacCuish v. Volkwagenwerk A.G. et al., 22 Mass.App.Ct. 380, 397, affirmed, 400 Mass. 1003 (1987). But these statutory factors ought not trigger disclosure of a grief-stricken father’s deepest feelings about the tragedy that has befallen his family.
A few words are in order about the depth of such sorrow to demonstrate the invasion presented by the defendant’s request.
The death of a child is one of the most tragic and significant losses we can experience.[2] While we are all aware of the love shared between a husband and wife, and between brothers and sisters, it is still the loss of a child that, for thousands of years, has been recognized as the most significant. This is because the bond between parent and a child is greater than any other bond that can exist between other human beings. Sophocles described sons as “the anchors of a mother’s life.”
We love and are devoted to our wives and husbands, love and support our parents, and are close to our brothers and sisters. But the love a father and mother feel for a child is different. A mother carries the child and brings it into this world. The mother has nurtured that child from the time of his/her birth. In every child resides a part of his mother and father. A child provides a parent with a small measure of immortality on earth. Even after we are gone, a part of us continues to live and contribute to humankind.
Some may suggest that with the passage of time, memory will diminish Jordan’s parents’ sense of loss. But anyone who has suffered such a tragic and catastrophic loss could not possibly feel this way. How often are we asked in daily conversation, “How many children do you have?” The father or mother who has lost a son (or daughter) must answer: “Well, I had-, but my son (or daughter) died.” Every time parents are asked that casual question, their hearts break.
Here, the Court is asked to allow Marcus Weiss’s deepest grief and dearest thoughts to be splayed in a most public forum. After deliberation, I simply cannot countenance such an effort.
The records sought are privileged under G.L.c. 233, section 20B (psychotherapist/patient relationship) or G.L.c. Ill, section 135 (social worker/patient relationship). Turning then to an analysis of the four factors set forth in Commonwealth v. Dwyer, 448 Mass. 122, 142 (2006), the records are very likely relevant because the triggering event for such counseling was Jordan’s death and it is both reasonable and logical to assume that Mr. Weiss conferred with Dr. Geer about the tragedy and the events that led up to, and followed, his son’s death. The second factor is, however, not satisfied in that the defendant can reconstruct at least part, and potentially all, of what Mr. Weiss told nurse practitioner Bragan. The third factor, the need for counsel to properly prepare for trial, is mitigated by the defendant’s right, already exercised, to depose Mr. Weiss. Finally, and most importantly, the defendant is unable to tell us what it is in those psychological counseling records that she needs to see (obviously because she has yet to see them). Given the failure to so state, the present motion is, indeed, a fishing expedition.
Accordingly, the defendant’s motion, well-written, well-argued and equally well-opposed, is DENIED.

Defense counsel so stated at the motion hearing; plaintiffs counsel appears to be aware of this audio recording.

his paragraph and the succeeding two others are paraphrased from “Who Will Speak for the Victim?,” Perdue, J. (1989).